*Cline v. Touchtunes Music Corp.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand nineteen.

PRESENT:
>        ROBERT D. SACK,
>        REENA RAGGI,
>        SUSAN L. CARNEY,
>                   *Circuit Judges.*

_____

MICHELLE CLINE,
Individually and on behalf of all others similarly situated,

>        *Plaintiff-Appellant*,

>                -and-

KELLY ENGSTROM,
Individually and on behalf of all others similarly situated,

>        *Plaintiff*,

>                v.                                                            No. 18-1756

TOUCHTUNES MUSIC CORPORATION,

>        *Defendant-Appellee.*

_____

FOR APPELLANT:                                JEFFREY MICHAEL NORTON, Newman
                                              Ferrara LLP, New York, N.Y.

FOR APPELLEE:                                 JOSEPH R. PALMORE (Jamie A. Levitt and
                                              Robert J. Baehr, *on the brief*), Morrison &
                                              Foerster LLP, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 25, 2018, is **AFFIRMED**.

In this settled class action brought under New York state law, plaintiff Cline appeals from that part of the final judgment awarding counsel fees based only on the average value of awarded song credits actually redeemed, but denying an incentive award and most costs. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm the judgment of the District Court.

**I.**

TouchTunes provides digital jukebox services by means of a touch-screen interface or a mobile application for smartphones (the "App"). In the relevant period, each song purchase typically cost $0.40. The jukeboxes come with a remote control, provided to venue owners, that allowed its user to skip a song on the queue. Before this lawsuit was filed, the TouchTunes terms of use disclosed generally that songs might not play and that refunds would not be issued for unplayed songs "under any circumstances." App'x 51-52. But the terms did not specifically disclose the built-in functionality that allows venue owners to skip songs deliberately.

Plaintiff-Appellant Michelle Cline alleges that a bartender in Montana used a remote control to skip a song she had selected using the TouchTunes App. Plaintiff Kelly Engstrom, who was later dismissed from this lawsuit, alleged that she had purchased songs

2

using cash at TouchTunes jukeboxes in Montana bars, and that her songs were also skipped. Cline and Engstrom commenced this action in June 2014, asserting class claims under New York General Business Law ("GBL") sections 349 (deceptive acts or practices) and 350 (false advertising), and common law claims for breach of the duty of good faith and fair dealing, and for unjust enrichment.

After two partially successful motions to dismiss and two amendments to the complaint, only Cline's section 349 claim remained, arguably linked to New York because of music servers and payment card processing systems purportedly located in that state. The scope of the section 349 claim was pared down to focus on TouchTunes' alleged failure to disclose in its published terms of use that venue personnel were able to skip selected songs.

In October 2017, the parties settled this claim with respect to a putative class of App users. In exchange for a release, TouchTunes agreed to award each class member one credit to play a song at any TouchTunes jukebox.

The putative class was divided into two subclasses. The first comprised roughly 166,000 users whom TouchTunes identified as having paid for a song that did not play fully. (This classification was over-inclusive because not all songs that failed to play fully were deliberately skipped.) These users, designated as potential members of the "Automatic Credit Sub-Class," were each sent a single song credit by email. The second subclass was drawn from the population of App users who had made purchases before TouchTunes began to keep records of partially played songs. Roughly 285,000 users were potential members of this "Claim Credit Sub-Class," regardless of whether their selected song had in fact been skipped. Each received an invitation to receive a song credit by filing a claim. Of this second subclass, roughly 2,200 users had filed claims as of the May 2, 2018 final approval hearing.

The settlement, which set a claim deadline of June 21, 2018, provided that song credits would expire one year after award. The parties and the court agreed that, on average, each song credit is worth approximately $0.40. Additionally, under the settlement, TouchTunes amended its terms of use to inform users explicitly that a selected song might

3

not play because it may be skipped through use of the remote control. TouchTunes agreed to pay for class notice and claims administration.

Separate from the class settlement terms, TouchTunes agreed not to object to an incentive award to Cline of up to $2,000 for serving as class representative, and to class counsel's fees and expenses of up to $100,000. The parties further decided not to charge any fee or incentive award against the settlement benefits awarded to class members.

At the May 2, 2018 final settlement approval hearing, the District Court opined that the action was "a nuisance case" and the settlement "pretty close to . . . worthless." App'x 99. In an oral calculation conducted with counsel for the parties, the court estimated that if all potential class members redeemed their $0.40 song credits, the settlement would be worth approximately $75,000 (considering roughly 166,000 members of the Automatic Credit Sub-Class and 2,200 claimants from the Claim Credit Sub-Class).[1] The District Court also found that class counsel's lodestar fee application was not supported by contemporaneous billing records, and that no substantial explanation had been provided for a $10,000 "consulting fee" for which reimbursement was sought. App'x 100.

The court ultimately awarded class counsel attorney's fees of $0.20 for each song credit that class members *actually* redeem before the credits expire, to be paid within 30 days of the credits' expiration date. It also denied an incentive award and approved only the $400 cost for filing the lawsuit.

## II.

Where a class has been certified, a district court "may award reasonable attorney's fees and non-taxable costs." Fed. R. Civ. P. 23(h). We review a district court's award of attorney's fees for abuse of discretion, which we will identify only if "(1) the court's decision rests on an error of law (such as application of the wrong legal principle) or clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a

---

[1] The district court stated that it did not expect substantially more claims to be made in the month remaining until the claim deadline of June 21, 2018.

clearly erroneous factual finding—cannot be located within the range of permissible decisions." *McDaniel v. County of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010) (alterations and internal quotation marks omitted). This highly deferential standard "takes on special significance when reviewing fee decisions because the district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." *Id.* (alternations and internal quotation marks omitted).

The abuse-of-discretion standard likewise applies to review of a district court's award of costs, *e.g.*, *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 497 (3d Cir. 2017), and to the decision whether to grant incentive awards for class representatives, *e.g.*, *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000).

1.      As to the fee award, the District Court did not abuse its discretion in disregarding counsel's lodestar computation, and instead calculating a reasonable attorney's fee by the "percentage of the fund" method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[B]oth the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases."). That choice is, moreover, supported here by counsel's failure to produce contemporaneous billing records, as required by our Circuit, to support a lodestar claim. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983).

Second, the District Court did not exceed the reasonable bounds of its discretion in awarding fees based on song credits actually redeemed, rather than technically awarded under the settlement. The decision finds support in the Class Actions Fairness Act of 2005 ("CAFA"), whose directives on "coupon settlements" are certainly informative here, if not controlling. *See* 28 U.S.C. § 1712; *In re Easysaver Rewards Litigation*, 906 F.3d 747, 756-58 (9th Cir. 2018). The relevant provision states that if a proposed class settlement provides for class members to recover coupons "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are *redeemed*." *Id.* § 1712(a) (emphasis added). Accordingly, having chosen to

award percentage-of-fund fees in this settlement, the District Court was well within its discretion in awarding fees based only on credits actually redeemed.

Third, the District Court did not err in declining to award higher fees based on the injunctive relief secured by class counsel. That decision aligns with the District Court's evaluation of the minimal value of the lawsuit and settlement, an evaluation supported by the record. While the injunction prompted TouchTunes to "clarif[y] its Terms of Use to specify that a TouchTunes mobile App user's selected song might not play because a person may skip a user's selected song using a TouchTunes-branded remote control," App'x 65, the real value of such relief to class members is questionable: even before this lawsuit was initiated, the vendor's terms of use informed users that their songs might not play and stated that refunds would not be issued for unplayed songs "under any circumstances." App'x 51-52.

2.     As to costs and Cline's requested incentive award, we note at the outset that under Federal Rule of Civil Procedure 23(h), a district court "may," but is not required to, award costs in a certified class action. Considering the District Court's reasonable assessment of the lawsuit's value, we cannot conclude that it abused its discretion in denying reimbursement for a fixed, upfront $10,000 consulting fee charged by a purported expert who apparently approached class counsel and "developed" or "helped . . . develop" the lawsuit. App'x 101. For the same reason, the District Court acted within its discretion in declining to reimburse copying, postage, and travel costs, and rejecting the proposed incentive award for plaintiff Cline.

Finally, we reject as baseless plaintiff's assertion that "personal bias" influenced the District Court's valuation of the case and fee award. Appellant's Br. 28. Plaintiff's sole support for this argument is the district court's statements regarding the negligible value of the lawsuit and settlement. The assessment finds support in the record. In any event, plaintiff's argument fails because claims of judicial bias "must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) (rejecting bias claim where the district court denied a fee award based on inadequate representation).

6

\* \* \*

We have considered Cline's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the District Court's judgment.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court